**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF KENTUCKY**

**LOUISVILLE DIVISION**

**BETHANY DAWN GILL**,

Plaintiff,

v.

**OWENSBORO HEALTH, INC., et al.,**

Defendants.

FILED
JAMES J. VILT JR,
CLERK
12/12/2025
U.S. DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

Civil Action No. 4:25-cv-183-JHM

**JURY DEMAND**

Plaintiff demands a trial by jury.

**COMPLAINT FOR CIVIL RICO AND RELATED CLAIMS**

Respectfully submitted,

Bethany Dawn Gill

7830 Lake Wilson Rd. #27

Davenport, FL 33896

813-708-3011

bdgi222@gmail.com

Pro Se Plaintiff

**I. JURISDICTION**

1. Federal question jurisdiction exists under 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c) because this action arises under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968.
2. The Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same case or controversy as the federal RICO claims.

**II. VENUE**

3. Venue is proper in the Western District of Kentucky, Louisville Division, under 28 U.S.C. § 1391(b)(1)-(2), because a substantial part of the events giving rise to the claims occurred in this district and many defendants reside in or near this district.
4. Under the Civil RICO discovery rule, Plaintiff's injury was discovered on March 11, 2025, during the Partial Hospitalization Program at Vanderbilt University Psychiatric

Hospital, as evidenced by medical records, pharmacy records, and short-term disability records.

**III. PARTIES—Exhibit chart will be submitted at a later date.**

5. Lisa Decker (ID1) is an individual who worked in Owensboro, Kentucky.
6. Brandy Huck-Wooldridge (ID2) is an individual who worked in Owensboro, Kentucky.
7. Melissa Connor (ID3) is an individual who resides in Owensboro, Kentucky.
8. Mark Marsh (ID4) is an individual who resides in Owensboro, Kentucky.
9. Beth Steele (ID5) is an individual who resides in Owensboro, Kentucky.
10. Dan Haire (ID6) is an individual who resides in Kailua, Hawaii.
11. Martha Gaw (ID7) is an individual who resides in Owensboro, Kentucky.
12. Samantha Roberts-Carson (ID8) is an individual whose last known location is Owensboro, Kentucky.
13. Stephanie Perna (ID9) is an individual who resides in Louisville, Kentucky.
14. Owensboro Health, Inc. (BD1) is a business operating in Owensboro, Kentucky, served via CT Corporation System.
15. Surgical Care Affiliates (BD2), c/o United Agent Group Inc., operates in Owensboro, Kentucky.
16. Kristi Harrison (ID10) resides in Owensboro, Kentucky.
17. Tom Bontrager (ID11) resides in Owensboro, Kentucky.
18. The Owensboro Family YMCA (BD3), c/o William G. Barron, operates in Owensboro, Kentucky.

19. Dr. Elizabeth Ottman (ID12) practices in Owensboro and Hartford, Kentucky.
20. Ohio County Hospital Corporation (BD4), c/o Shelley Shouse, operates in Hartford, Kentucky.
21. Abby Shelton (ID13) resides in Owensboro, Kentucky.
22. Keith Wells (ID14) works in Owensboro, Kentucky.
23. Owensboro-Daviess County Chamber of Commerce, Inc. (BD5), c/o Dave Kirk, operates in Owensboro, Kentucky.
24. Candace Castlen-Brake (ID15) worked in Owensboro, Kentucky.
25. Kathy Sanderson (ID16) worked in Owensboro, Kentucky, and resides in Johnson City, Tennessee.
26. Dr. Troy Haleman (ID17) resides in Owensboro, Kentucky.
27. Dr. Miguel Lalama (ID18) works in Owensboro, Kentucky.
28. Erica Payne-Morris (ID19) worked in Owensboro, Kentucky.
29. The Lee Health System, Inc. d/b/a “Lee Health” (BD6), c/o CT Corporation System, operates in Lee County, Florida.
30. Scott Lewis (ID20) works in Frankfort, Kentucky.
31. Brandon Hatton (ID21) lives in Kentucky but works in Alabama for Fisher contracting company.

## IV. FACTUAL BACKGROUND

### A. Events at Owensboro Health

1. On January 26, 2023, Defendants Lisa Decker and Brandy Huck-Wooldridge called Plaintiff into an office on Owensboro Health property, shut the door, and issued a Performance Improvement Plan ("PIP") without witnesses present.
2. Plaintiff was told that failure to sign or comply with the PIP would result in termination from her position as Staff Nurse and Nurse Educator at Owensboro Health.
3. Both Lisa and Brandy were wearing Owensboro Health name badges at the time.
4. Plaintiff had never previously been written up and had recently expressed interest to Human Resources in transferring to another department.
5. Lisa and Brandy admitted they had no training in creating or issuing performance improvement plans.
6. Plaintiff submitted a rebuttal to the PIP, which was later revoked in writing.
7. Owensboro has an obstetrics and delivery department but they did not have a Zulresso clinic.
8. Around the time the PIP was issued, Plaintiff was asked by Kathy Sanderson to conduct a mock Joint Commission walk-through of the endoscopy department, which revealed multiple compliance failures.
9. Plaintiff's findings reflected poorly on the leadership of Lisa, Brandy, and Melissa, and revealed failures in oversight and expired items in patient use areas.
10. Kathy Sanderson and "Michelle" informed Plaintiff that they did not authorize Lisa and Brandy to issue the PIP.

11. Kathy further stated that Owensboro Health did not endorse the PIP and that Lisa and Brandy acted "rogue."
12. Plaintiff believed the PIP threatened her career, financial stability, insurance, retirement, childcare, and her ability to repay federal student loans.
13. Plaintiff ultimately took a constructive discharge from Owensboro Health on March 31, 2023.
14. Kathy escorted Plaintiff to meet with Beth Steele regarding the incident, during which Beth advised Plaintiff to "assume positive intent."
15. Plaintiff emailed Dr. Dufrayne regarding the issues before leaving the department.
16. Melissa Connor offered Plaintiff a promotion to full-time Nurse Educator, which Plaintiff declined because she believed to be a bribe following her report of harassment.
17. Plaintiff felt entrapped, unsafe, and unable to work without fear of retaliation.
18. Plaintiff emailed Mark Marsh, the CEO, regarding these concerns but received no response until referencing an attorney.
19. Lisa Decker and Melissa Connor kept their positions at Owensboro Health despite the reported harassment, fraud, and threatening behaviors despite the zero tolerance policy.
20. Around the time I was issued the performance improvement plan at Owensboro Health, the Cardiac Cath lab was in need of a part time nurse educator to take over before the Joint Commission survey window.
21. Kathy offered all the perioperative nurse educators the role, but no-one accepted.
22. The part time endoscopy nurse educator role was later filled by Ruth Walker who had extensive cardiac experience.

23. If I hadn't submitted a rebuttal to the performance improvement plan, it would have stood in my human resource file as truth and prevented me from transferring out of the department as well as blocked me from future promotions and career growth.
24. Melissa Connor repeatedly harassed me at work—one time she made me repeat what she just said—in a room full of my co-workers.
25. Post-termination insurance KOBRA forms were sent from Owensboro Health after the constructive discharge.
26. Owensboro Health and Lee Health both utilize or have utilized CT Corporations of Plantation, FL to conduct business in the past.

**B. Events at Surgical Care Affiliates—SCA Health**

27. Dan Haire, Martha Gaw, Samantha Roberts-Carson, Stephanie Perna engaged in deceptive and fraudulent hiring practices.
28. All legal provider contracts and anesthesia contracts include a start and termination date which was evident prior to my hire date.
29. Dr. Lalama and Samantha were overheard by me talking about how slow my turnover times are in his rooms-- I feel that this is harassment.
30. The schedule at SCA health reflects preferential treatment/scheduling patterns.
31. SCA Health lost my original perioperative 101 contract which included details about by future bonuses as well as the start/signature date.
32. I was asked to sign a completely new perioperative 101 contract at SCA Health.

33. Samantha Roberts-Carson and Erica Payne-Morris summoned me to an office without the presence of a witness and told me that Dr. Haleman did not want me working in his room.
34. It is my understanding that SCA Health—my employer-- was renting space from Owensboro Health and not Dr. Haleman.
35. Samantha and Erica provided me the written statement where a witness overheard Dr. Haleman talking about me in the hallway.
36. I requested a 1:1 meeting/discussion with Dr. Haleman.
37. Samantha and Erica did not coordinate this crucial mediation and instead told me that Dr. Haleman did not say what they had already stated and provided me a copy of.
38. I felt like the joke of the surgery center at that point.
39. I offered to go part time—Samantha declined despite their continued issuance of low census.
40. I took a constructive discharge from SCA Health.
41. I used all of my retirement.
42. On multiple occasions, I had to use PTO to off set the low census at SCA Health which was s result of loss of provider contracts.
43. When they began cutting hours and laying people off at SCA Health; Dan said we could go work at Owensboro Health to make up for the hours lost.
44. I emailed Stephanie Perna about potential relocation and job transfer to the Gladiolus surgery center—I never received a response.
45. Post-termination insurance KOBRA forms were sent by SCA Health after the constructive discharge.

**C. Events at Owensboro Family YMCA**

46. I had to find a new job. I took a position at the YMCA where I performed various roles for minimal pay.
47. I reported Kristi and Tom for harassment to Courtney McKearin.
48. I said to Tom-- what other leaders (Josh James, Jordan Proffitt and Courtney my superior) also frequently complained about but feared job loss for speaking out against the CEO-Tom.
49. I was called into a meeting at Panera Bread—where I was told that Tom was giving a part of my job role to Madison—a child care worker.
50. At the time, we were breaking ground on the new child care center and Tom said that money was tight.
51. The steam room at the Owensboro Family YMCA kept going down—which required maintenance and affected membership numbers/attendance.
52. Tom provided Ron Powers a gift card for fixing the steam room.
53. Tom informed the leaders (Courtney, Jordan, Josh and myself) in a meeting one day that board member Mark Berry coordinated someone to fix the steam room, but he didn't want his name attached to it.
54. Tom threatened us not to tell.
55. The termination letter from the YMCA was sent thru certified mail service.
56. Keith Wells is a Kentucky State worker.
57. Keith Wells also sets on the board of directors at the Owensboro Family YMCA where they vote on the usage of state/federal funds for YMCA matters--within the state of Kentucky.

58. Abby Shelton is a city worker in Owensboro, KY.

59. Abby Shelton also sets on the board of directors at the Owensboro Family YMCA where they vote on the usage of state/federal funds for YMCA matters—within the city of Owensboro.

60. Kristi Harrison's husband randomly came in with two other guys from his work and began working on the YMCA's computer access privileges/IT.

61. Kristi Harrison's husband and the two guys that came to work on my laptop about a month before my termination date—were not wearing Owensboro Family YMCA name badges.

**D. Events at Lee Health**

62. I was recruited by Lee Health—across state lines—to work at a hospital which is minutes away from the Gladiolous SCA surgery center.

63. The Gladiolus surgery center website reflects their partnership with UK Healthcare.

64. DNV inspectors were in the building during my training period.

65. I was terminated after reporting to the hospital that they were falsely advertising themselves as a government entity per their handbook.

66. Lee Health is a non-profit and not a government entity.

67. Lee Health and Owensboro Health both utilize or have utilized CT Corporations of Plantation, FL to conduct business in the past.

**E. Events at Ohio County Hospital**

68. I worked at Ohio County Healthcare around 2019 when the blueprints and strategic plans for the new surgery center were being drawn up.
69. Dr. Elizabeth Ottman was the Chief of Surgery at Ohio County Healthcare while also working at Owensboro Health.
70. Dr. Elizabeth Ottman also runs the Zulresso clinic for post-partum depression at Ohio County Healthcare—a hospital that does not have an obstetrics/delivery unit.
71. Dr. Ottman was attempting to recruit Dr. Taylor back to Ohio County Healthcare while on Owensboro Health's property.
72. Around 2019—when I was employed--Shelley Casteel—Ohio County Specialty Care Director—at the time verified the ENT room blueprints with Dr. Taylor in the presence of Rowgena Cain, APRN and myself.
73. Ohio County Healthcare's strategic plan will reveal their premeditated recruitment needs from 2019.
74. The provider recruitment strategy of Ohio County hospital that dates back to 2019 paired with Dr. Ottmans' conflict of interest--directly impacted SCA Health's operations and their ability to staff their center and provide me full time work as discussed int he interview.

**F. Events noted within the Owensboro-Daviess County Chamber of Commerce-Owensboro**

75. Candace Castlen-Brake is the former CEO of the Owensboro Chamber of Commerce.
76. The Owensboro Chamber of Commerce website details where they offer business referrals to businesses that buy into their chamber.

77. Candace Castlen-Brake is also listed as a member of the Owensboro Health Board of Directors.
78. Owensboro Health is a business associated with the chamber of commerce.
79. Owensboro Family YMCA is a business associated with the Chamber of Commerce.
80. In May of 2017, I met Brandon Hatton.
81. In June of 2017, Brandon Hatton drove me out of the state and checked us in to

**G. Events at Gaylord Opryland/with Brandon Hatton**

82. May 24, 2017: Brandon sent me flowers to my work.
83. June 3-4, 2017: Brandon drove me out of the state of KY and to TN.
84. Brandon then checked us into the Gaylord Opry--a lavish hotel.
85. Brandon got me drunk and raped me that night.
86. I was unable to leave the next day due to lack of transportation.
87. June 10-11, 2017: We took a trip to St. Louis.
88. July 2, 2017: He was notified that I was pregnant.
89. I was met with disgust and anger.
90. Brandon waited a long time before telling his family about me/the pregnancy.
91. December 2017: Brandon took me to Florida to stay in a camper for an extended period of time--away from my family.
92. Brandon’s daughters were there in Flroida with us.
93. Again, I didn't have a way to leave because I couldn't drive the clutch which seemed to pop frequently on the way down to Florida.

94. During pregnancy: I can remember crying and being so sick in the middle of the night, that I needed to go to the hospital because I was losing fluid/electrolytes rapidly. I tried and tried to get Brandon to take me and for the longest time he wouldn't--until I said that I would have to call my mother to come help in the night--then he got up to take me but remained upset the remainder of the night/am.

95. February 15, 2018: Our son was born and multiple times thereafter--Brandon tried to get me to stay at home to draw government benefits.

96. Brandon informed me that his daughter's mother went to prison for Medicaid fraud--which instilled an insane fear in me to even consider ever asking for help for a child that we share-- given his tone of voice/demeanor/micro-expressions the day he told me.

97. Brandon and I split up around the time my son turned 3 due to trust issues.

98. I feared for my safety/health after a friend informed that he was witnessed having dinner with another woman.

99. Multiple times throughout the past 7 years he has threatened me financially, emotionally, psychologically, verbally.

100. Brandon has only ever been available to father our son around his work/travel schedule--this can be confirmed via pick up and drop off logs.

101. Brandon coerced our three year old into saying that mommy looks like a "big fat marshmallow" or frequently in public--he would say/ask Jagger to say "mommy's butt stinks." It was humiliating.

102. Brandon tried to claim our son on taxes one year--knowing that he didn't live with him >50% of the time and it delayed my refund.

103. Multiple times Brandon would tell me that he is going to send money or provide support on a certain date-- never did or it was days later.

104. In the past, when I tried to take Brandon to custody court and a DNA test was completed, he coerced me into releasing the request because he said they would put him in jail if he missed payment(s)/came up on a bad time and missed payments/and he said that I didn't /wouldn't want that for our son.

105. The psychological manipulation from Brandon has caused an insane fear of speaking out-- for a period of years.

106. Around Christmas 2024, Brandon tried to force himself onto me sexually--in a workhouse in Muhlenberg County, KY--whom I am told is owned by Fisher Contracting. Exhibit will be provided.

107. I recorded the conversation where Brandon admits to doing so and will present this to the court. Exhibit will be provided.

108. Around this time, Brandon cut a deep V-neck in my new gown to expose my cleavage more—without my consent. Exhibit will be provided.

109. Brandon threatened to take away my child and issue an amber alert if I didn't provide him our exact whereabouts on December 6, 2025.

110. Brandon contacted my mother and threatened to take her grandchild from me as well. She was in fear and intimidated by him.

111. On December 6, 2025, Brandon informed me that the Florida State Police had been trying to contact me via phone and now that I didn't answer the call-they were liekly going to issue an amber alert.

112. I asked for the cop's contact information and department name.

113. I requested Brandons address.

114. Brandon failed to provide his address but continued requesting mine.

115. To my knowledge, he was not in the state of Florida when he was threatening me

116. I felt that he was again threatening my safety and I contacted the Osceola County Sherrif's office to make a report.

117. I forwarded Brandon their contact card with the incident number listed on it and requested that the cop he is referring to—reach out to their department at the number provided.

118. I blocked Brandon from contacting me.

119. I filed an injunction thru Polk county which was denied due to lack of evidence being provided.

120. Brandon reported that he will continue reaching out to whomever he has to in an attempt to locate his son.

121. The trafficking me across state lines affected interstate commerce by supplying monies to the lavish Gaylord Opry hotel chain and local restaurants/shops.

**D. Factual Background and Narrative (Expanded)**

**Predicate Acts Under 18 U.S.C. § 1961(1)**

**(Wire Fraud, Mail Fraud, Extortion, Bribery, Labor Trafficking)**

**Mail Fraud – 18 U.S.C. § 1341**

**Counts:**

**[1]** On or about **[2023-2025]**, Defendant(s) **[ [Lisa Decker, Brandy Huck-Wooldridge, Melissa Connor, Beth Steele, Kathy Sanderson, Mark Marsh, Dan Haire, Martha Gaw, Samantha Roberts-Carson, Erica Payne-Morris, Stephanie Perna, Owensboro Health INC., Surgical Care Affiliates INC., Kristi Harrison, Tom Bontrager, Owensboro Family YMCA, Dr. Elizabeth Ottman, Ohio County Hospital Corporation, Keith Wells, Abby Shelton, Owensboro-Daviess County Chamber of Commerce, Dr. Troy Haleman, Miguel Lalama, Lee Health]** knowingly used or caused the use of the United States Postal Service or commercial mail carriers to transmit fraudulent documents, notices, forms, or communications designed to deceive Plaintiff.

**[2]** The mailed materials contained false representations intended to obtain Plaintiff's property, rights, labor, or silence through deceit.

**[3]** The mailing was in furtherance of the racketeering enterprise and constitutes a predicate act under 18 U.S.C. § 1961(1).

**Wire Fraud – 18 U.S.C. § 1343**

**Counts:**

**[1]** Defendant(s) **[Lisa Decker, Brandy Huck-Wooldridge, Melissa Connor, Beth Steele, Kathy Sanderson, Mark Marsh, Dan Haire, Martha Gaw, Samantha Roberts-Carson, Erica Payne-Morris, Owensboro Health INC., Surgical Care Affiliates INC., Kristi Harrison, Tom Bontrager, Owensboro Family YMCA, Ohio County Hospital Corporation, Keith Wells, Abby Shelton, Owensboro-Daviess County Chamber of Commerce, Lee Health] t**ransmitted fraudulent communications by telephone, text message, email, electronic records, or online platforms for the purpose of executing a scheme to defraud Plaintiff.

**[2]** Such transmissions were interstate in nature and executed knowingly and intentionally to mislead, coerce, and harm Plaintiff.

**[3]** These acts constitute wire fraud under 18 U.S.C. § 1343 and are qualifying predicate acts.

**Bribery – 18 U.S.C. § 201 / KRS § 521.020**

**Counts:**

**[1]** On or about **[2022-2025]**, Defendant(s) Owensboro Health INC., SCA Health, Owensboro Family YMCA, Owensboro-Daviess County Chamber of Commerce and Lee Health**]** corruptly offered financial or professional benefits to **[Lisa Decker, Melissa Connor, Beth Steele, Kathy Sanderson, Mark Marsh, Martha Gaw, Samantha Roberts-Carson, Erica Payne-Morris, Stephanie Perna, Kristi Harrison, Tom Bontrager, Keith Wells, Abby Shelton, Dr. Troy Haleman, Miguel Lalama and Candace Castlen-Brake offering** favorable treatment or suppression of complaints related to Plaintiff.

**[2] T**hese actions constitute bribery under federal and Kentucky law and qualify as predicate acts under 18 U.S.C. § 1961(1).

**Extortion – Hobbs Act, 18 U.S.C. § 1951**

**Counts:**

**[1]** Defendant(s) **[Lisa Decker, Brandy Huck-Wooldridge, Melissa Connor, Beth Steele, Kathy Sanderson, Mark Marsh, Dan Haire, Martha Gaw, Samantha Roberts-Carson, Erica Payne-Morris, Stephanie Perna, Owensboro Health INC., Surgical Care Affiliate's INC., Kristi Harrison, Tom Bontrager, Owensboro Family YMCA, Dr. Elizabeth Ottman, Ohio County Hospital Corporation, Abby Shelton, Owensboro-Daviess County Chamber of Commerce, Dr. Troy Haleman, Miguel Lalama, Lee Health, Scott Lewis]** used threats, coercion, or intimidation to obtain compliance, silence, or property from Plaintiff.

**[2]** Defendants threatened job loss, reputational harm, fabricated legal consequences, and other forms of retaliation to force Plaintiff into unwanted actions.

**[2]** These wrongful threats affected interstate commerce and constitute extortion under the Hobbs Act.

**Labor Trafficking – 18 U.S.C. § 1589 (Forced Labor)**

*(Note: Forced labor* ***is*** *a RICO predicate act)*

**Counts:**

**[1]** Defendant(s) **[Lisa Decker, Brandy Huck-Wooldridge, Melissa Connor, Beth Steele, Kathy Sanderson, Mark Marsh, Dan Haire, Martha Gaw, Samantha Roberts-Carson, Erica Payne-Morris, Stephanie Perna, Owensboro Health INC., Surgical Care Affiliates INC., Kristi Harrison, Tom Bontrager, Owensboro Family YMCA, Dr. Elizabeth Ottman, Ohio County Hospital Corporation, Abby Shelton, Owensboro-Daviess County Chamber of Commerce, Dr. Troy Haleman, Miguel Lalama, Lee Health]** knowingly obtained Plaintiff's labor or services through threats, coercion, abuse of legal process, or manipulation of Plaintiff's vulnerabilities, in violation of 18 U.S.C. § 1589.

**[2]** Defendants [Lisa Decker, Brandy Huck-Wooldridge, Tom Bontrager, Kristi Harrison] knowingly exploited Plaintiff by threatening adverse employment actions, retaliation, or legal consequences unless Plaintiff complied with their demands.

**[3]** These acts constitute labor trafficking and qualify as RICO predicate acts.

**PREDICATE ACT – SEX TRAFFICKING BY FORCE, FRAUD, OR COERCION**

(18 U.S.C. § 1591)**

**Statutory Basis:**

18 U.S.C. § 1591 prohibits recruiting, enticing, harboring, transporting, providing, obtaining, advertising, or maintaining a person knowing, or in reckless disregard of the fact, that force, threats of force, fraud, coercion, or abuse of law or legal process will be used to cause the person

to engage in a commercial sex act.

Sex trafficking under 18 U.S.C. § 1591 is expressly included as a RICO predicate act under 18 U.S.C. § 1961(1).

1. Brandon Hatton recruited, enticed, harbored, transported, provided, obtained, maintained, or advertised plaintiff;
2. Brandon knew, or recklessly disregarded the fact that the plaintiff was intoxicated and unable to consent.
3. Brandon's force, fraud, coercion to cause the Plaintiff to engage in a **commercial sex act**;
4. And the conduct was in or affected interstate commerce by funneling monies into the Gaylord Opryland and nearyby shops/restauraunts.
5. The plaintiff ended up pregnant.
6. The plaintiff birthed the baby via c-section at the Owensboro Health hospital which would help fund the enterprise.
7. The defendant is now in a relationship with a nurse that works at the Owensboro Health labor and delivery department.
8. The defendant utilized interstate phone communications.

**Non-Predicate Acts That Support the RICO Enterprise—Supplemental Jurisdiction**

**Negligence**

**Counts:**

**[#1]** Defendant(s) **[Lisa Decker, Brandy Huck-Wooldridge, Melissa Connor, Beth Steele, Kathy Sanderson, Mark Marsh, Dan Haire, Martha Gaw, Samantha Roberts-Carson,**

**Erica Payne-Morris, Stephanie Perna, Owensboro Health INC., Surgical Care Affilliates INC., Kristi Harrison, Tom Bontrager, Owensboro Family YMCA, Dr. Elizabeth Ottman, Ohio County Hospital Corporation, Keith Wells, Abby Shelton, Owensboro-Daviess County Chamber of Commerce, Dr. Troy Haleman, Miguel Lalama, Lee Health, Scott Lewis]** breached their duty of care to Plaintiff by failing to act reasonably under the circumstances, resulting in foreseeable harm.

**[2]** Defendant(s) **[Lisa Decker, Brandy Huck-Wooldridge, Melissa Connor, Beth Steele, Kathy Sanderson, Mark Marsh, Dan Haire, Martha Gaw, Samantha Roberts-Carson, Erica Payne-Morris, Stephanie Perna, Owensboro Health INC., Surgical Care Affilliates INC., Kristi Harrison, Tom Bontrager, Owensboro Family YMCA, Dr. Elizabeth Ottman, Ohio County Hospital Corporation, Keith Wells, Abby Shelton, Owensboro-Daviess County Chamber of Commerce, Dr. Troy Haleman, Miguel Lalama, Lee Health, Scott Lewis]** negligent supervision, investigation, reporting, and oversight directly contributed to Plaintiff's injuries and supported the enterprise's ability to operate without accountability.

**False Imprisonment**

<u>**Counts:**</u>

**[1]** Defendant(s) **[Lisa Decker, Brandy Huck-Wooldridge, Melissa Connor, Beth Steele, Kathy Sanderson, Mark Marsh, Dan Haire, Martha Gaw, Samantha Roberts-Carson, Erica Payne-Morris, Stephanie Perna, Owensboro Health INC., Surgical Care Affiliates INC., Kristi Harrison, Tom Bontrager, Owensboro Family YMCA, Dr. Elizabeth Ottman,**

**Ohio County Hospital Corporation, Keith Wells, Abby Shelton, Owensboro-Daviess County Chamber of Commerce, Dr. Troy Haleman, Miguel Lalama, Lee Health, Scott Lewis]]** unlawfully restrained, detained, or confined Plaintiff without legal justification, using intimidation, coercion, or deception.

**[2]** This wrongful confinement caused physical, emotional, and professional harm and furthered the goals of the enterprise to control and silence Plaintiff.

**Defamation**

**Counts:**

**[1]** Defendant(s) **[Lisa Decker, Brandy Huck-Wooldridge, Melissa Connor, Samantha Roberts-Carson, Erica Payne-Morris, Owensboro Health INC., Surgical Care Affiliates INC., Kristi Harrison, Tom Bontrager, Owensboro Family YMCA, Abby Shelton, Dr. Troy Haleman, Dr. Miguel Lalama]** knowingly made false statements of fact about Plaintiff to third parties, damaging Plaintiff's reputation, employment, opportunities, and credibility.

**[2] T**hese statements were made maliciously and in furtherance of the enterprise's efforts to retaliate against, discredit, or silence Plaintiff.

**Aiding and Abetting a Harasser/Predator**

**Counts:**

**[1]** Defendant(s) **[Lisa Decker, Brandy Huck-Wooldridge, Melissa Connor, Beth Steele, Kathy Sanderson, Mark Marsh, Martha Gaw, Samantha Roberts-Carson, Erica Payne-Morris, Stephanie Perna, Owensboro Health INC., Surgical Care Affiliates INC., Kristi Harrison, Tom Bontrager, Owensboro Family YMCA, Abby Shelton, Owensboro-Daviess County Chamber of Commerce, Lee Health, Scott Lewis]** assisted, encouraged, or enabled harassment against Plaintiff by failing to intervene, reporting falsely, retaliating against Plaintiff, or protecting the harasser for personal or organizational gain.

**[2]** These acts supported the enterprise by intimidating Plaintiff and preventing exposure of the defendants' unlawful activities.

**Deceptive Hiring Practices**

**Counts:**

**[1]** Defendant(s) **[Lisa Decker, Brandy Huck-Wooldridge, Melissa Connor, Beth Steele, Mark Marsh, Dan Haire, Martha Gaw, Samantha Roberts-Carson, Stephanie Perna, Owensboro Health INC., Surgical Care Affiliates INC., Kristi Harrison, Tom Bontrager, Owensboro Family YMCA, Dr. Elizabeth Ottman, Ohio County Hospital Corporation, Abby Shelton]** misrepresented job duties, workplace conditions, intentions, or employment requirements during the hiring process, inducing Plaintiff into employment under false pretenses.

**[2]** Such deception was used to place Plaintiff in a vulnerable position, enabling the enterprise's later acts of fraud, retaliation, coercion, and labor exploitation.

**Wrongful Termination**

**Counts:**

**[1]** Plaintiff was terminated under false, retaliatory, or pretextual grounds after reporting misconduct or refusing to participate in unlawful activities.

**[2]** The termination /constructive discharge was directly linked to Plaintiff's attempts to expose or oppose the enterprise's criminal and unethical actions at Owensboro Health, SCA Health, Owensboro Family YMCA, and Lee Health.

**Retaliation**

**Counts:**

**[1** Defendant(s) **[Lisa Decker, Brandy Huck-Wooldridge, Melissa Connor, Samantha Roberts-Carson, Erica Payne-Morris, Surgical Care Affiliates INC., Kristi Harrison, Tom Bontrager, Owensboro Family YMCA, Abby Shelton, Lee Health]** engaged in retaliatory actions—including threats, termination, defamation, harassment, or denial of rights—because Plaintiff exercised protected rights or objected to unlawful conduct.

**[2]** Retaliation is a key method by which the enterprise enforced silence and punished dissenters.

**Conflict of Interest (Supporting RICO Enterprise)**

**Counts:**

**[1]** Defendant(s) **[Lisa Decker, Brandy Huck-Wooldridge, Melissa Connor, Beth Steele, Kathy Sanderson, Mark Marsh, Dan Haire, Martha Gaw, Samantha Roberts-Carson, Erica Payne-Morris, Stephanie Perna, Owensboro Health INC., Surgical Care Affiliates INC., Kristi Harrison, Tom Bontrager, Owensboro Family YMCA, Dr. Elizabeth Ottman, Ohio County Hospital Corporation, Keith Wells, Abby Shelton, Owensboro-Daviess County Chamber of Commerce, Dr. Troy Haleman, Miguel Lalama, Lee Health, Scott Lewis]** acted with undisclosed or improper conflicts of interest, using their professional positions to advance the goals of the enterprise, protect wrongdoers, and retaliate against Plaintiff.

**[2]** These conflicts enabled the enterprise to function without proper oversight and facilitated the continuation of criminal acts.

**PRAYER FOR RELIEF (RICO COUNTS)**

WHEREFORE, Plaintiff demands judgment against Defendants jointly and severally as follows:

1. Treble damages pursuant to 18 U.S.C. § 1964(c);
2. Compensatory damages;
3. Punitive damages where permitted;
4. Attorney's fees and costs;
5. Any appropriate injunctive or declaratory relief;
6. Any other relief this Court deems just and proper.

7. Court approval of long term disability.

8. Full sole custody of my son Jagger Moon-Douglas Hatton

Respectfully submitted,



Bethany Dawn Gill Plaintiff, Pro Se

[7830 Lake Wilson Rd. #27]

[Davenport, FL 33896]

[813-708-3011]

[bdgi222@gmail.com]

Date: 12/12/2025