**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT OWENSBORO**

**BETHANY DAWN GILL**                                                      **PLAINTIFF**

**v.**                                                          **CIVIL ACTION NO. 4:25CV-183-JHM**

**OWENSBORO HEALTH, INC.** *et al.*                              **DEFENDANTS**

### MEMORANDUM OPINION

Plaintiff Bethany Dawn Gill filed the instant *pro se* action proceeding *in forma pauperis* alleging claims under the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961, *et seq*., and related claims.  She filed her complaint (DN 1) on December 12, 2025, and filed an amended complaint (DN 8) on December 19, 2025.  The Federal Rules of Civil Procedure provide that a plaintiff is entitled to amend her pleading once as a matter of right if done within twenty-one days after serving it.  Fed. R. Civ. P. 15(a)(1)(B).  Because Defendants have not yet been served with process, Plaintiff is entitled to amend her complaint as a matter of right.  Because "[a]n amended complaint supersedes an earlier complaint for all purposes," *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 589 (6th Cir. 2013), the amended complaint supersedes, or replaces, the original complaint.

This matter is now before the Court on initial review of the amended complaint (DN 8) pursuant to 28 U.S.C. § 1915(e) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  Upon screening, the instant action will be dismissed for the reasons stated herein.

### I. SUMMARY OF FACTUAL ALLEGATIONS

Plaintiff brings this action against thirty-three Defendants.  In the first part of her statement of claim, Plaintiff maintains that she was discharged from employment at Owensboro

Health, Inc., Surgical Care Affiliates (SCA) Health, the Owensboro Family YMCA, Lee Health, and Ohio County Hospital, each of which she names as a Defendant.

In regard to Owensboro Health, Plaintiff states that she took a constructive discharge on May 31, 2023. She reports that Defendant Melissa Connor offered her a promotion "which Plaintiff declined because she believed to be a bribe following her report of harassment." She states that she "felt entrapped, unsafe, and unable to work without fear of retaliation." She asserts that Defendants "Lisa Decker and Melissa Connor kept their positions at Owensboro Health despite the reported harassment, fraud, and threatening behaviors despite the zero tolerance policy." She maintains that Defendant Connor "repeatedly harassed me at work—one time she made me repeat what she just said—in a room full of my co-workers." She further states, "Owensboro Health and Lee Health both utilize or have utilized CT Corporations of Plantation, FL to conduct business in the past which helps tie together the enterprises registered agents."

With regard to her employment at SCA Health, Plaintiff alleges that Defendants Dan Haire, Martha Gaw, Samantha Roberts-Carson, and Stephanie Perna "engaged in deceptive and fraudulent hiring practices." She further states that Defendants "Dr. Lalama and Samantha were overheard by me talking about how slow my turnover times are in his rooms—I feel that this is harassment." She states, "The schedule at SCA Health reflects preferential treatment/ scheduling patterns." Plaintiff further maintains that Defendants Roberts-Carson and Erica Payne-Morris "summoned me to an office without the presence of a witness and told me that [Defendant] Dr. Haleman did not want me working in his room." She reports that she requested a meeting with Defendant Haleman but that Defendants Roberts-Carson and Payne-Morris "did not coordinate this crucial mediation and instead told me that Dr. Haleman did not say what they had

2

already stated." She states, "I felt like the joke of the surgery center at that point." She also asserts, "When I previously filed a case in civil circuit court, SCA Health's attorney commented that she thought I might have a RICO Case."

With respect to her employment at the Owensboro Family YMCA, she states that she reported Defendants Kristi Harrison and Tom Bontrager for harassment to Courtney McKearin. She continues, "I said to Tom—what other leaders (Josh James, Jordan Proffitt and Courtney my superior) also frequently complained about but feared job loss for speaking out against the CEO-Tom." She states that she was informed by Defendant Bontrager that he was giving part of her job role to another employee. She also states that the steam room at the YMCA "kept going down" and that "Tom informed the leaders (Courtney, Jordan, Josh and myself) in a meeting one day that board member Mark Berry coordinated someone to fix the steam room, but he didn't want his name attached to it" and that "Tom threatened us not to tell." She also states that Defendant Keith Wells is a Kentucky state worker and Defendant Abby Shelton is a city worker for Owensboro, Kentucky. She states that they are also on the board of directors of the Owensboro Family YMCA "where they vote on the usage of state/federal funds for YMCA matters" within the state of Kentucky and the city of Owensboro.

Moreover, in regard to her employment at Lee Health, Plaintiff states, "I was recruited by Lee Health—across state lines—to work at a hospital which is minutes away from the Gladiolous SCA surgery center. . . . The Gladiolus surgery center website reflects their partnership with UK Healthcare." She asserts, "I was terminated after reporting to the hospital that they were falsely advertising themselves as a government entity per their handbook." She also states, "I was terminated after requesting reasonable accommodation in writing to the Human Resource department at Lee Health." She maintains, "Lee Health is a non-profit and not a government

3

entity. . . . Lee Health and Owensboro Health both utilize or have utilized CT Corporations of Plantation, FL to conduct business which ties the enterprise together under federal jurisdiction."

With regard to Ohio County Hospital, Plaintiff states, "I worked at Ohio County Healthcare around 2019 when the blueprints and strategic plans for the new surgery center were being drawn up." She asserts, "Per my experience—The provider recruitment strategy of Ohio County hospital that dates back to 2019 paired with [Defendant] Dr. Ottmans' conflict of interest—directly impacted SCA Health's operations and their ability to staff their center and provide me full time work as discussed in the interview."

Plaintiff also makes allegations against Defendant Owensboro-Daviess County Chamber of Commerce. She states, "[Defendant] Candace Castlen-Brake is the former CEO of the Owensboro Chamber of Commerce. . . . The Owensboro Chamber of Commerce website details where they offer business referrals to businesses that buy into their chamber." She states that Defendant Castlen-Brake is a member of the Owensboro Health board of directors and that Owensboro Health and Owensboro Family YMCA are businesses associated with the Chamber of Commerce.

Plaintiff next describes a series of events involving her child's father, Defendant Brandon Hatton. She states, "During pregnancy: I can remember crying and being so sick in the middle of the night, that I needed to go to the hospital because I was losing fluid/electrolytes rapidly." She continues, "I tried and tried to get Brandon to take me and for the longest time he wouldn't—until I said that I would have to call my mother to come help in the night—then he got up to take me but remained upset the remainder of the night/am." She states that after her son was born "Brandon tried to get me to stay at home to draw government benefits." She reports, "Brandon and I split up around the time my son turned 3 due to trust issues. . . . I feared

4

for my safety/health after a friend informed that he was witnessed having dinner with another woman." She continues, "Multiple times throughout the past 7 years he has threatened me financially, emotionally, psychologically, verbally." She further asserts that "when I tried to take Brandon to custody court and a DNA test was completed, he coerced me into releasing the request because he said they would put him in jail if he missed payment(s)/came up on a bad time . . . [and] he said that I didn't /wouldn't want that for our son." She also reports that in 2024 "Brandon tried to force himself onto me sexually—in a workhouse in Muhlenberg County, KY." Plaintiff further states, "Brandon threatened to take away my child and issue an amber alert if I didn't provide him our exact whereabouts on December 6, 2025." She states that they both contacted law enforcement and that she "filed an injunction thru Polk County which was denied due to lack of evidence being provided." She maintains, "The trafficking of me across state lines affected interstate commerce by supplying monies to the lavish Gaylord Opry hotel chain and local restaurants/shops and returning profit to Defendant(s) Owensboro Health Inc. via the delivery of my child."

Plaintiff next describes her experience living in a condominium in Fort Myers, Florida, which was owned by Defendants Jack and Sonia Lomano and managed by Defendants Paul Cohen and Maple Gardens Condo Association. She lists various problems with the condominium, including problems with the water in the master bedroom, a leak in the living room, the air conditioning not working, and other issues. She states that she "was forced to vacate the premise due to it being in poor repair" and that Defendant Jack Lomano refused to give her security deposit back. She also states that she "had to unexpectedly relocate which has caused a major financial burden and housing instability/dysregulation."

As relief, Plaintiff seeks treble damages under 18 U.S.C. § 1964(c), compensatory and punitive damages, costs and fees, and unspecified declaratory and injunctive relief.

## II. STANDARD

Because Plaintiff is proceeding *in forma pauperis*, this Court must review the instant action. 28 U.S.C. § 1915(e); *McGore*, 114 F.3d at 608-09. Upon review, the Court must dismiss a case at any time if it determines that an action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). This Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). However, the duty "does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).

6

### III. ANALYSIS

#### A. Federal claims

Plaintiff alleges RICO claims against Defendants.  Plaintiff lists the following predicate acts to support her RICO claims: mail fraud in violation of 18 U.S.C. § 1341; wire fraud in violation of 18 U.S.C. § 1343; bribery in violation of 18 U.S.C. § 201 and Ky. Rev. Stat. § 521.020; extortion in violation of the Hobbs Act, 18 U.S.C. § 1951; labor trafficking in violation of 18 U.S.C. § 1589; and sex trafficking in violation of 18 U.S.C. § 1591.  She also lists claims for negligence, false imprisonment, defamation, "aiding and abetting a harasser/predator," deceptive hiring practices, wrongful termination, retaliation, and "conflict of interest (supporting RICO enterprise)."

To state a RICO claim, a plaintiff must allege "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  A RICO "enterprise" includes any "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  RICO defines "racketeering activity" to include, among other things, "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . , which is chargeable under State law and punishable by imprisonment for more than one year[.]"  18 U.S.C. § 1961(1)(A).  "A pattern of racketeering activity requires, at minimum, two acts of racketeering activity within ten years of each other."  *Heinrich*, 668 F.3d at 409 (citing 18 U.S.C. § 1961(5)).  It also requires a showing "'that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.'"  *Id*. (quoting

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).  To plausibly state a RICO conspiracy claim, "plaintiffs must successfully allege all the elements of a RICO violation, as well as alleging 'the existence of an illicit agreement to violate the substantive RICO provision.'"  *Id*. at 411 (quoting *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983)).  Finally, a plaintiff advancing a civil RICO claim must allege injury to business or property.  *See* 18 U.S.C. § 1964(c).

Plaintiff bears the burden of asserting "[f]actual allegations [that are] enough to raise a right for relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Here, Plaintiff sues thirty-three individuals or entities, including former employers, supervisors, and co-workers from five different places of employment, the Owensboro-Daviess County Chamber of Commerce, the father of her child, and her landlords and property managers of a condo in Florida.  She alleges no plausible facts to show that these individuals and entities were associated to support an "enterprise" under the standard for stating a claim under RICO or that they had an illicit agreement amongst them.  Moreover, her allegations of "racketeering activity" are conclusory and unsupported by specific plausible factual allegations supporting a claim for any of the predicate offenses.  While the Court must accept as true all of the allegations contained in Plaintiff's complaint, such treatment is not extended to legal conclusions.  As the Supreme Court has held, "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Accordingly, Plaintiff fails to meet the elements of a RICO claim, and the claim must be dismissed for failure to state a claim upon which relief may be granted.

Furthermore, Plaintiff states her damages are as follows: "Plaintiff suffered lost wages, loss of employment benefits, emotional distress, reputational harm, medical expenses, loss of

enjoyment and other economic, anxiety that interferes with driving ability, loss of consortium and non-economic damages." Plaintiff fails to allege injury to business or property, and her RICO claim fails to state a claim for this reason, as well.

Further, to the extent Plaintiff is attempting to bring an action under any of the federal or state criminal provisions she lists, these criminal statutes do not give rise to a private right of action. *See, e.g.*, *United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003); *Theriot v. Mich., Dep't of Human Servs.*, No. 13-14559, 2013 U.S. Dist. LEXIS 159790, at *2 (E.D. Mich. Nov. 8, 2013) ("[O]nly the United States Attorney may prosecute an action under a criminal statute; no private right of action exists.").

Moreover, in as much as Plaintiff is attempting to initiate criminal charges against any Defendant, "[i]t is well settled that the question of whether and when prosecution is to be instituted is within the discretion of the Attorney General." *Powell v. Katzenbach*, 359 F.2d 234, 235 (D.C. Cir. 1965). Only federal prosecutors, and not private citizens, have the authority to initiate federal criminal charges. *Sahagian v. Dickey*, 646 F. Supp. 1502, 1506 (W.D. Wis. 1986); *see also United States v. Nixon*, 418 U.S. 683, 693 (1974) ("Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case."); *Saro v. Brown*, 11 F. App'x 387, 388 (6th Cir. 2001) ("A private citizen has no authority to initiate a federal criminal prosecution; that power is vested exclusively in the executive branch."). Plaintiff is a private citizen and cannot bring criminal charges in this Court against anyone.

Finally, while Plaintiff does not specifically allege any claim under 42 U.S.C. § 1983, she makes vague references to Defendants receiving federal funds. Section 1983 creates a cause of action against any person who, under color of state law, causes the deprivation of a right secured by the Constitution or the laws of the United States. A claim under § 1983 must therefore allege

9

two elements:  (1) the deprivation of federal statutory or constitutional rights by (2) a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001).  Absent either element, no § 1983 claim exists.  *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).  Plaintiff does not allege that any Defendant violated her constitutional rights, and none of the thirty-three Defendants is a state actor.  To the extent any Defendant receives federal funding, receipt of public funding does not make a private entity a state actor for purposes of § 1983.  *See, e.g.*, *Taylor v. Fam. Health Ctrs., Inc.*, No. 3:25-CV-583-RGJ, 2026 U.S. Dist. LEXIS 117814, at *67 (W.D. Ky. May 27, 2026) ("Private hospitals operating as not-for-profit entities . . . and receiving public funds through federal welfare programs are not thereby converted into state actors within the meaning of Section 1983.") (quoting *Jeung v. McKrow*, 264 F. Supp. 2d 557, 571 (E.D. Mich. 2003); *Crowder v. Conlan*, 740 F.2d 447, 450 (6th Cir. 1984)).  Therefore, any § 1983 claim Plaintiff may be attempting to bring must be dismissed for failure to state a claim upon which relief may be granted.

### B. State-law claims

To the extent Plaintiff is alleging separate state-law claims, because Plaintiff's federal claims are being dismissed, the Court declines to exercise supplemental jurisdiction over any state-law claims.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]").  The state-law claims, therefore, will be dismissed without prejudice.

## IV. CONCLUSION

Accordingly, the Court will dismiss the action and deny all pending motions as moot by separate Order.[1]

Date:    June 11, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:      Plaintiffs, *pro se*
4414.010

---

[1] The Court reviewed Plaintiff's "motion to expedite screening, preserve evidence, and seal certain exhibits" (DN 23); "emergency motion to transfer venue" (DN 24); and "emergency motion for expedited federal review/prosecution for RICO/retaliation/kidnapping & attempted murder" (DN 26) and finds no grounds to negate the dismissal of this action for the reasons stated herein.